**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **GERALDINE NELSON,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| **vs.** | : | **NO. 19-cv-2323** |
| | : | |
| **ANDREW SAUL,** | : | |
| **Commissioner of Social Security,** | : | |
| **Defendant.** | : | |

## MEMORANDUM OPINION

**LYNNE A. SITARSKI**
**UNITED STATES MAGISTRATE JUDGE**                    **March 12, 2020**

    Geraldine Nelson, (Plaintiff), filed this *pro se* action pursuant to 42 U.S.C. § 405(g)

seeking review of the Commissioner of the Social Security Administration's decision denying

her claim for Disability Insurance Benefits under Title II of the Social Security Act.  This matter

is before me for disposition upon consent of the parties.  For the reasons set forth below,

Plaintiff's request for review is DENIED.


## I.     PROCEDURAL HISTORY

    On December 2, 2015, Plaintiff filed an application for a period of Disability Insurance

Benefits under the Act.  (R. 147-148).  Plaintiff alleged disability since August 29, 2014, due to

having suffered cardiac arrest, a frozen left shoulder, and nerve damage in her left arm to her

fingers.  (R. 51).  The Social Security Administration initially denied her application on March 1,

2016.  (R. 51-57).  Plaintiff requested a hearing before an Administrative Law Judge (ALJ),

which was held on May 9, 2018.  (R. 89).  Plaintiff, represented by an attorney, appeared and

testified at the hearing.  (R. 21-40).  An impartial vocational expert (VE) also testified at the

hearing via telephone.  (R. 40-45).  On July 26, 2018, the ALJ issued a decision finding Plaintiff

was not disabled and denying benefits under the Act.  (R. 7-20).  Plaintiff requested review of the

ALJ's decision, which the Appeals Council subsequently denied on April 25, 2019, making the

ALJ's decision the final decision of the Commissioner.  (R. 1-6).

On May 28, 2019, Plaintiff filed the instant *pro se* Complaint seeking judicial review of

the Commissioner's decision.  (Compl., ECF No. 2).  On the same date, Plaintiff consented to

my jurisdiction pursuant to 28 U.S.C. § 636(c).  (Consent Order, ECF No. 3).  On May 31, 2019,

I granted Plaintiff leave to proceed *in forma pauperis*.  (Order, ECF No. 5).  On October 15,

2019, having not received Plaintiff's brief, I ordered that Plaintiff show cause why this matter

should not be dismissed for lack of prosecution.  (Order, ECF No. 11).  In lieu of a response to

the order to show cause, Plaintiff filed her Brief in Support of Request for Review on November

18, 2019, and the Commissioner filed his Response on December 17, 2019.  (Pl.'s Br., ECF No.

12; Def.'s Resp., ECF No. 13).


## II.      FACTUAL BACKGROUND

The Court has reviewed the administrative record in its entirety, and summarizes here the

evidence relevant to Plaintiff's request for review.

Plaintiff was born on September 23, 1957, and was fifty-six years old on the alleged

disability onset date.  (R. 25, 50, 51, 167).  Plaintiff does not drive, her fiancé drives her where

she needs to go.  (R. 34-35).  Plaintiff had past relevant work as an administrative assistant.  (R.

16, 30).

### A.      Medical Evidence

On August 29, 2014, while vacationing in Williamsburg, Virginia, Plaintiff suffered

cardiac arrest due to ventricular fibrillation (VF), accompanied by aspiration pneumonia and persistent fevers. (R. 29, 219-23). She was taken first to Sentara Hospital. An emergency cardiac catheterization was performed and was negative for obstructive CAD. (R. 366). Plaintiff was then transferred to VCU Medical Center, where she underwent treatment and was diagnosed with nonischemic cardiomyopathy. (*Id.*). Plaintiff was also diagnosed with deep vein thrombosis (DVT), for which she was treated and prescribed outpatient medication. (R. 12-13, 208). Plaintiff remained at VCU until September 20, 2014, when she was discharged. (R. 393). She was prescribed aspirin, warfarin, and other medications, and instructed to refrain from strenuous exercises and follow a heart healthy diet. (R. 395-97).

When Plaintiff returned to Philadelphia from Virginia, she began seeing Doctor Chethan Gangireddy at Temple University Hospital Cardiology. (R. 502-06). On November 3, 2014, Dr. Gangireddy evaluated her condition and found that her cardiac musculature "did not show any abnormal finding other than decreased [ejection fraction]." (R. 505). Dr. Gangireddy prescribed a conservative treatment of continued medication, as well as three months of therapy for Plaintiff's DVT. (*Id.*). On November 18, 2014, Plaintiff was fitted with an implantable cardioverter defibrillator (ICD) on the left side of her chest. (R. 502-03).

On February 24, 2016, Plaintiff presented to Dr. Daniel Goldman, M.D., an Independent Medical Examiner. (R. 537-52). Plaintiff described her treatment history and stated that she did not have "any cardiac type of chest pain, but just has persistent left shoulder pain," which she described as "sharp and burning," lasting for several hours at a time. (R. 537-38). Plaintiff also indicated that she is able to do some light housework and laundry, and can bathe herself, but does not go shopping because of her arm pain. (R. 538). On physical examination, Dr. Goldman indicated that Plaintiff had a normal gait and "[n]eeded no help changing for exam or getting on

and off exam table" and was able to "rise from chair without difficulty." (R. 539). He indicated that Plaintiff's heart had a "[r]egular rhythm," with "[n]o murmur, gallop, or rub audible." (*Id.*) On examination of her extremities, Dr. Goldman noted that Plaintiff had 5/5 strength in her right arm and 4/5 strength in her left, with intact hand and finger dexterity. (R. 539-40). Dr. Goldman diagnosed her with "[c]ardiac arrest status post defibrillator placement" and "[l]eft shoulder pain with decreased range of motion." (R. 540). Based upon his physical examination and assessment of Plaintiff's medical records, Dr. Goldman concluded that Plaintiff could lift and carry up to ten pounds continuously, sit or walk for eight hours in an eight-hour workday, and never reach overhead with her left arm. (R. 541-45). He also concluded that she could perform activities such as sorting and handling paper or files, using standard public transportation, and preparing meals for herself and caring for her personal hygiene. (R. 546).

Plaintiff's physician, Dr. Chethan Gangireddy, also submitted a letter to the ALJ. (R. 553). Dr. Gangireddy opined that Plaintiff's "functional capacity has further decreased as she is unable to walk up 1 flight of stairs without stopping halfway to catch her breath," and that she "stops frequently when performing activities of daily living such as folding laundry." (*Id.*). Dr. Gangireddy also opined that, due to her "severe left arm/shoulder pain," "fatigue," and "shortness of breath," Plaintiff "is unable to return to her previous state of employment." (*Id.*)

On September 4, 2017, Plaintiff was in Hawaii on vacation when she was admitted to the Straub Clinic and Hospital with a sore throat and a left side facial droop. (R. 554). Plaintiff was diagnosed with sepsis, left bundle branch block, and a stroke, or acute cerebrovascular accident (CVA). (R. 555-56). Plaintiff was prescribed additional medications and discharged four days later, on September 8, 2017. (R. 554-58). An echocardiogram of Plaintiff's heart showed normal left and right ventricular size, thickness, and systolic function, with an estimated ejection

rate between 55- and 60%, as well as septal motion consistent with a left bundle branch block. (R. 558).

## B. Lay Evidence

At the May 9, 2018 administrative hearing, Plaintiff testified that she did not believe she could work because of lethargy, pain, and limited left side mobility caused by her heart condition. (R. 29, 31). She stated that the problems with her left shoulder began after her ICD was implanted, and that since then she has suffered continual pain. (R. 29). She also testified that she is unable to get out of bed three to four times a week and has difficulty walking due to lethargy caused by her heart regurgitation. (R. 31). She testified that she lives in a house with her fiancé, who assists her with cooking, cleaning, and shopping. (R. 31, 35). She also testified that she has four children and one granddaughter who visit her. (R. 35-36). She stated that she spends time in her house, watches T.V., and sometimes uses the computer. (R. 35).[1]

Plaintiff's fiancé, Kevaun Reid, also submitted a written third party opinion which is generally consistent with Plaintiff's hearing testimony. (R. 580). Reid opined that Plaintiff experiences extreme shoulder pain and lethargy, and has difficulty getting out of bed two-to-three times a week. (*Id.*).

## III. LEGAL STANDARD

To be eligible for Social Security benefits under the Act, a claimant must demonstrate that she cannot engage in substantial gainful activity because of a medically determinable

---

[1] Plaintiff also alleges in her Brief that in June 2019 she was diagnosed with degenerative disc disease in her C5 and C6 vertebrae, which causes her constant pain in that area. (Pl.'s Br. at 3). However, this new evidence does not relate to the period on or before the date of the ALJ hearing, and therefore is not a basis for review. C.F.R. § 416.1470(a)(5), (c). Furthermore, Plaintiff has not submitted any medical records pertaining to this diagnosis.

physical or mental impairment which can be expected to result in death, or which has lasted or

can be expected to last for a continuous period of at least twelve months.  42 U.S.C. §

423(d)(1)(A).  A five-step sequential analysis is used to evaluate a disability claim:

> First, the Commissioner considers whether the claimant is currently
> engaged in substantial gainful activity.  If [she] is not, then the
> Commissioner considers in the second step whether the claimant has
> a "severe impairment" that significantly limits [her] physical or
> mental ability to perform basic work activities.  If the claimant
> suffers a severe impairment, the third inquiry is whether, based on
> the medical evidence, the impairment meets the criteria of the
> impairment listed in the "listing of impairments," … which result in
> a presumption of disability, or whether the claimant retains the
> capacity to work.  If the impairment does not meet the criteria for a
> listed impairment, then the Commissioner assesses in the fourth step
> whether, despite the severe impairment, the claimant has the
> residual functional capacity to perform [her] past work.  If the
> claimant cannot perform [her] past work, then the final step is to
> determine whether there is other work in the national economy that
> the claimant can perform.

*Sykes v. Apfel*, 228 F.3d 259, 262-63 (3d Cir. 2000); *see also* 20 C.F.R. § 404.1520.  The

claimant bears the burden of establishing steps one through four, and then the burden shifts to the

Commissioner at step five to establish that the claimant is capable of performing other jobs in the

national economy, in light of her age, education, work experience, and residual functional

capacity.[2]  *Poulos v. Comm'r. of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007).

Judicial review of a final decision of the Commissioner is limited.  A district court is

bound by the factual findings of the Commissioner if they are supported by substantial evidence

and decided according to correct legal standards.  *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir.

1999).  Substantial evidence is "more than a mere scintilla," and "such relevant evidence as a

reasonable mind might accept as adequate."  *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 118

---

[2]  Residual functional capacity (RFC) is defined as "that which an individual is still able to do despite the limitation caused by [her impairments]."  20 C.F.R. § 404.1545(a); *see also Fargnoli v. Massanari*, 247 F.3d 34, 40 (3d Cir. 2001).

(3d Cir. 2000) (citations omitted).  Even if the record could support a contrary conclusion, the decision of the ALJ will not be overruled as long as there is substantial evidence to support it. *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986).  The court has plenary review of legal issues.  *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999).

## IV.    ALJ'S DECISION

Using the five-step inquiry described above, the ALJ determined that Plaintiff was not disabled.  (R. 10-17).  The ALJ made the following findings:

1.    At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since August 29, 2014, the alleged onset date.  (R. 12).

2.    At step two, the ALJ found that Plaintiff suffers from the following severe impairments: status post cardiac arrest with defibrillator placement and left upper extremity neuropathy.  (*Id.*)

3.    At step three, the ALJ found that Plaintiff's impairments do not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P., App'x 1.  (R. 13).

4.    At step four, the ALJ found that Plaintiff has the Residual Functional Capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a) except she is not able to overhead reach with the left upper extremity, and can walk less than one hour in an eight-hour day, with the remaining time seated.  (*Id.*)

5.    The ALJ concluded Plaintiff is capable of performing past relevant work as an Administrative Assistant, and that this work does not require the performance of work-related activities precluded by Plaintiff's Residual Function Capacity.  (R. 16).

Accordingly, the ALJ determined that Plaintiff was not disabled.  (R. 17).

## V.    DISCUSSION

In her request for review, Plaintiff raises two arguments:[3] (1) the ALJ erred in assessing her symptoms and credibility; and (2) the ALJ's RFC assessment is not supported by substantial evidence. (Pl.'s Br. at 1-4). The Commissioner responds that the ALJ properly assessed Plaintiff's subjective complaints regarding her symptoms and that substantial evidence supports the ALJ's RFC assessment and conclusion that Plaintiff was not disabled during the closed period. (Def.'s Resp. at 3-10). For the following reasons, Plaintiff's request for review is denied.

### A.    The ALJ's Evaluation of Symptoms

Plaintiff first disagrees with the ALJ's evaluation of her subjective symptoms. Liberally interpreting her *pro se* filing, I consider her contention to be that her constant pain would not allow her to be productive and maintain a job. (Pl.'s Br. at 2-3). She seems to be claiming that the ALJ erred in concluding that her subjective complaints were not work preclusive. (*See id.*).

Social Security Regulations require a two-step evaluation of subjective symptoms: (1) a determination as to whether there is objective evidence of a medically determinable impairment that could be expected to produce the symptoms alleged; and (2) an evaluation of the intensity and persistence of the pain or symptoms and the extent to which it affects an individual's ability to work. 20 C.F.R. § 404.1529. When an individual's alleged symptoms suggest a greater level of severity than can be supported by the objective medical evidence alone, an ALJ should consider: (1) the extent of the claimant's daily activities; (2) the location, duration, frequency,

---

[3] Plaintiff has filed this request for review *pro se*. Therefore, I have liberally construed her brief in evaluating her arguments. *E.g., Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed." (internal quotations omitted)); *Liggo-Redding v. Estate of Sugarman*, 659 F.3d 258, 265 (3d Cir. 2011) ("Pro se filings, such as [Plaintiff's] must be liberally construed.").

and intensity of the symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication; (5) treatment other than medication for the symptoms; (6) measures used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3); S.S.R. 16-3p, 2017 WL 5180304 at *7-*8. District Courts must give great deference to the ALJ's assessment of subjectively reported symptoms. *Zirnsak v. Colvin*, 777 F.3d 607-612-13 (3d Cir. 2014) (citing *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 506 (3d Cir. 2009) ("In determining whether there is substantial evidence to support an administrative law judge's decision, we owe deference to [her] evaluation of the evidence [and] assessment of the credibility of witnesses . . . .")); *see also Hoyman v. Colvin*, 606 F. App'x 678, 681 (3d Cir. 2005).

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, she also concluded that Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms were "not entirely consistent with the medical evidence and other evidence in the record." (R. 14). Specifically, the ALJ noted that treatment for Plaintiff's impairment had been conservative, Plaintiff was not hospitalized for her heart condition after her cardiac arrest in 2014, and Plaintiff reported engaging in activities of daily living. The ALJ thus concluded that Plaintiff's "subjective complaints are not consistent with the medical and other evidence." (R. 15-16).

The record contains substantial evidence supporting the ALJ's conclusion that Plaintiff's subjective complaints did not preclude all work activity. (R. 13-20). As the ALJ noted, the medical evidence and treatment notes for the closed period show that, following her cardiac arrest in 2014, Plaintiff was regularly reported to be doing well and stable, exhibiting normal

orientation, a steady gait, normal pulmonary/chest effort, no respiratory distress, normal heart rate and sounds, intact sensation and coordination, normal range of motion, intact muscle strength, and no edema, muscle atrophy, or cranial nerve deficits. (R. 504-05, 529, 531, 538-40, 555, 574). Her consultative physical examination in February 2016 indicated that she was capable of sedentary work, that her chest and lungs were clear, that her heart rhythm was regular, and that, despite a slightly decreased range of motion and muscle strength in her left shoulder and arm, she otherwise exhibited full muscle strength and normal range of motion. (R. 539-40, 549-50). The ALJ further noted that Plaintiff's treatment history "has been conservative, including medication and physical therapy." (R. 15). The ALJ properly discounted Plaintiff's subjective complaints based on this contradictory medical evidence. *See, e.g.*, *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x 475, 481 (3d Cir. 2007) (stating that when evaluating a claimant's subjective complaints, those complaints "must be discredited by contradictory medical evidence.").

In sum, I find no error with the ALJ's evaluation of Plaintiff's symptoms. The ALJ properly discussed substantial evidence of record for the requested closed period—objective medical evidence, physical examination results, clinical findings, and Plaintiff's activities of daily living—which supports her determination. (R. 15-20). Moreover, the ALJ's discussion and explanation was "a clear and satisfactory explication of the basis on which it rests" sufficient to permit meaningful judicial review. *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981); *see also Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119-20 (3d Cir. 2000). Accordingly, Plaintiff's request for review on this basis is denied.

## B.     The RFC is Supported by Substantial Evidence

Liberally construing the *pro se* filing, it appears that Plaintiff next argues that the ALJ's

RFC assessment is not supported by substantial evidence. (*See* Pl.'s Br. at 2-3). Plaintiff argues that the ALJ erred by finding that she could perform a range of sedentary work, rather than finding her disabled. (*See id.*). Plaintiff claims she has "so many restrictions as to why [she] cannot work a sedentary job," and that her "constant pain … would impact [her] work performance and not allow [her] to be productive and keep a job." (*Id.*).

An RFC assessment determines "what an individual can do in a work setting in spite of the functional limitations and environmental restrictions imposed by all of [her] medically determinable impairment(s)." SSR 83-10, 1983 WL 31251, at *7. The ALJ must include all credibly established limitations in the RFC. *Ramirez v. Barnhart*, 372 F.3d 546, 552 (3d Cir. 2004) (citing *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987)). Ultimately, the ALJ makes the RFC and disability determinations. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011).

Here, the ALJ limited Plaintiff to sedentary work, with no overhead reaching with the left extremity, and walking for one hour or less out of an eight-hour workday, with the remaining time seated. (R. 13).

The ALJ's RFC assessment is supported by substantial evidence. The ALJ provided a thorough discussion of the evidence of record (R. 14-16), including Plaintiff's echocardiogram in October 2014 which noted that her left and right ventricles showed normal size and systolic function. (R. 516-21). The ALJ also considered medical records showing that Plaintiff had recovered a month after her discharge from the hospital, with normal cardiovascular and pulmonary examinations (R. 502-11), as well as more recent medical records showing normal ventricular function and a conservative recommended treatment of medication and physical therapy. (R. 554-79). The ALJ also considered evidence from Plaintiff's examination by an

independent examiner, reporting that she denied any cardiac chest pain, had intact grip strength, no muscle atrophy or sensory deficit, and that the range of motion and strength of her upper and lower extremities were within normal functional limits. (R. 537-52, 554-79). Finally, the ALJ considered Plaintiff's report that she engaged in activities of daily living, including light housework and laundry, and that she could bathe and dress herself. (R. 21-49). The ALJ also considered evidence of Plaintiff's limited range of motion in her left arm, and accordingly adjusted the RFC to include a restriction on reaching overhead using that arm. (R. 13). In addition, the ALJ considered Plaintiff's complaints of difficulty walking, as well as medical evidence of her cardiac arrest and shortness of breath, and found that Plaintiff could walk for less than one hour in an eight-hour day, with the remaining time seated. (R. 15). The ALJ based her RFC finding that plaintiff was limited to sedentary work on this evidence of record. I conclude that this constitutes substantial evidence supporting the ALJ's RFC assessment. Therefore, because substantial evidence supports the ALJ's conclusion and RFC, review on this basis is denied.

## VI.    CONCLUSION

For the foregoing reasons, I find the ALJ did not err, and I conclude the RFC is supported by substantial evidence. Accordingly, Plaintiff's request for review is denied.

BY THE COURT:

   /s/ Lynne A. Sitarski
LYNNE A. SITARSKI
United States Magistrate Judge

12